UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CYNTHIA GILMORE,
    *Petitioner*,

v.

DAREK PUZIO, Acting Warden, FCI Danbury,
    *Respondent.*

No. 3:24cv1685 (VAB)

**RULING AND ORDER**

Cynthia Gilmore ("Petitioner") filed a petition for writ of habeas corpus.

For the reasons that follow, after reviewing the petition, Acting Warden Puzio's response, and Ms. Gilmore's reply, the petition is **DENIED**.

**I.    BACKGROUND**

Ms. Gilmore is a federal prisoner serving a 228-month sentence at FCI Danbury. Resp't Ex. 3, ECF No. 9-3 ¶ 5; Fed. Bureau of Prisons ("BOP"), *Inmate Locator Service*, BOP Registration No. 63556-056, https://www.bop.gov/inmateloc/ (last visited February 6, 2025).[1] Her projected release date, after good conduct credits are applied, is July 26, 2033. ECF No. 9-3 ¶ 6; Resp't Ex. 3(A), ECF No. 9-3 at 7. Ms. Gilmore has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 alleging that (1) BOP has miscalculated sentence credits she has earned under the First Step Act ("FSA") and that (2) BOP has not placed her in a Residential Reentry Center ("RRC") or home confinement, as required by law.[2] *See* Pet., ECF No. 1 at 10.

---

[1] The Court may take judicial notice of BOP's inmate locator website. *United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information).

[2] To the extent Ms. Gilmore attempts to raise additional claims in her reply brief, *see* ECF No. 10, "[a] party cannot raise an issue for the first time in a reply brief." *Wang v. Omni Hotels Mgmt. Corp.*, 607 F. Supp. 3d 219, 229–30 (D. Conn. 2022) (collecting cases). Moreover, the claims in Ms. Gilmore's reply brief are unexhausted. *See Cutanda-Hierrezuelo v. Napolitano*, 402 F. App'x 558, 559 (2d Cir. 2010) (claim raised for the time first in a

1

## II.     STANDARD OF REVIEW

A federal prisoner may petition for habeas relief if she is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of h[er] sentence, but challenges instead its execution subsequent to h[er] conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (internal citations omitted). Thus, habeas petitioners may seek relief under § 2241 "to challenge 'such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.'" *McPherson v. Lamont*, 457 F. Supp. 3d 67, 74 (D. Conn. 2020) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001), and collecting other Second Circuit cases).

For any such challenge, the petitioner "bears the burden of proving that [s]he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy h[er] burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

---

reply brief was waived and unexhausted, "as [litigant] failed to raise it before the agency."). "[A]n inmate's claim is not considered fully exhausted until it is considered by the BOP General Counsel[.]" *Emery v. Pullen*, No. 3:22-CV-1003 (SVN), 2023 WL 348114, at *5 (D. Conn. Jan. 20, 2023). The BOP General Counsel considered none of Ms. Gilmore's claims. *See* ECF No. 9-3 ¶ 27. Thus, the claims in Ms. Gilmore's reply brief are dismissed as unexhausted. *Young v. McClendon*, No. 22-CV-00710 (KAD), 2022 WL 2952772, at *5 (D. Conn. July 26, 2022) (noting that "[t]he court may dismiss a § 2241 petition *sua sponte* for failure to exhaust state court remedies."). The Court will nonetheless consider the claims raised in Ms. Gilmore's petition because Acting Warden Puzio did not allege nonexhaustion of those claims in his response. *See Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004) (holding that failure to exhaust is an affirmative defense that can be waived if defendants fail to raise it).

2

**III.    DISCUSSION**

Ms. Gilmore's allegations that BOP has miscalculated her FSA credits and has not placed her in an RRC or on home confinement in violation of federal law fall within the categories of challenges that may be brought under § 2241. *See Jiminian*, 245 at 146 (listing "computation of a prisoner's sentence by prison officials" and the "type of detention" as permissible grounds for a § 2241 petition).

As a result, the Court will address both her challenge to the BOP's calculation of her sentence credits, and her request to be transferred to an RRC or home confinement in turn.

### A. The Calculation of Sentence Credits

On December 21, 2018, Congress enacted the FSA, which was intended to encourage federal prisoners to complete evidence-based recidivism reduction programs ("EBPRs") and other productive activities ("PAs"). Prisoners may receive "Earned Time Credits" ("ETCs") after successfully completing these programs. 18 U.S.C. § 3632(d)(4)(A) (stating that "[a] prisoner . . . who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits . . ."). ETCs qualify prisoners for early release from custody. *See* 18 U.S.C. §§ 3632(d)(4)(C), 3624(g)(1)(A).

Application of ETCs may also enable a prisoner to be transferred sooner to prerelease custody, be it in a residential reentry center, on home confinement, or on supervised release. *See* 18 U.S.C. § 3624(g). Prisoners classified as minimum or low risk of recidivism are eligible to earn either 10 or 15 days of credit for every 30 days of successful participation in EBPRs or PAs. *See* 18 U.S.C. § 3632(d)(4)(A)(i), (ii).

In addition to specifying when prisoners can earn ETCs, the FSA considers situations where a prisoner is eligible to earn ETCs but cannot have those credits applied to reduce his or

her sentence. For example, prisoners must have shown a demonstrated risk reduction or be maintaining a minimum/low risk of recidivism to have their ETCs applied. *See* 18 U.S.C. § 3624(g)(1)(B). And although a prisoner may be accumulating ETCs each month, the prisoner is only "eligible" to have those credits applied to her sentence when she has "earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). This second consideration is especially relevant here.

The Court liberally construes the petition as first alleging that BOP has not properly calculated Ms. Gilmore's sentence credits. *See* ECF No. 1 at 10 (stating that "[m]y ETC[ ]s are not being calculated properly for my term. I am requesting my full projected ETC[ ]s applied to my sentence.").

Ms. Gilmore has been incarcerated since May 18, 2017. Resp't Ex. 3(A), ECF No. 7-3 at 8. She entered BOP on March 14, 2019. *Id.* at 7. After statutory good conduct credits are applied under 18 U.S.C. § 3624(b)(1), Ms. Gilmore's release date is July 26, 2033. *Id.* That release date, however, may advance if Ms. Gilmore's ETCs reduce the length of her sentence. As of November 14, 2024 (the date of the Sentence Monitoring Computation Data appended to Acting Warden Puzio's response), Ms. Gilmore had earned 960 ETCs. ECF No. 9-3 ¶ 8; Resp't Ex. 3(B), ECF No. 9-3 at 10 (showing a total of 960 ETCs).

But only 365 ETCs may be applied to her early release. *See* 18 U.S.C. § 3624 (g)(3) (stating that "the Director of the Bureau of Prisons may transfer the prisoner to begin [a] term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632." (alteration added)); *Cicchiello v. Peters*, No. 3-24-CV-855 (KAD), 2024 WL 3161607, at *1 (D. Conn. June 25, 2024) (noting that "365 days of FSA time credits

4

[was] the maximum number of FSA credits permitted to be applied toward early release." (alteration added)); ECF No. 9-3 at 10 (showing only 365 ETCs credited towards Ms. Gilmore's early release). The remaining 595 ETCs ("excess ETC credits") will be applied to Ms. Gilmore's prerelease community placement. *See Fall v. Stover*, No. 3:24-CV-1176 (OAW), 2024 WL 4564605, at *1 (D. Conn. Oct. 24, 2024) (noting that prisoner's excess ETC credits "will apply to pre-release community placement.").

Ms. Gilmore does not maintain that she has not received credit for programming she completed.[3] Rather, she appears to maintain that BOP is not applying her ETCs to her sentence.[4] *See* ECF No. 1 at 10.

The Court disagrees.

While a prisoner may accumulate ETCs each month, she is "only 'eligible' to have those credits applied to [her] sentence when [s]he has 'earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment.'" *Clark v. Jamison*, No. 3:23-CV-455 (MPS), 2023 WL 7300582, at *3 (D. Conn. Nov. 6, 2023) (emphasis added) (quoting 18 U.S.C. § 3624(g)(1)(A)) (rejecting the same argument under analogous facts). Thus, a prisoner's ETCs, regardless of when they are earned, are only "applied" as the prisoner approaches her projected release date (after statutory good conduct credits are applied).

---

[3] To the extent she attempts to do so in her reply brief, this claim is not properly before the Court. *See supra* note 2.

[4] To the extent Ms. Gilmore argues she should receive credit for ETCs she has yet to earn, *see* ECF No. 1 at 10 ("requesting [her] full *projected* ETC[ ]s [be] applied to [her] sentence . . ." (emphasis added)), this is contrary to statute. *See* 18 U.S.C. § 3632(d)(4)(A) (stating that "[a] prisoner . . . who successfully *completes* evidence-based recidivism reduction programming or productive activities, shall earn time credits . . ." (emphasis added)). *See also Fall*, *supra*, at *2 (D. Conn. Oct. 24, 2024) (citing § 3632(d)(4)(A) to conclude that "future or incomplete programming does not generate FSA credit[.]").

As a result, under the relevant statute, BOP may only apply Ms. Gilmore's 365 ETCs to her early release when that number equals the number of days remaining before July 26, 2033. ECF No. 9-3 at 7. This should occur on July 26, 2032. *See* ECF No. 9-3 at 13 (showing an "FSA Conditional Release Date [of] 07-26-2032"). Moreover, BOP expects to apply Gilmore's excess ETC credits to pre-release community placement on December 19, 2028, "assuming [Ms. Gilmore] continues to earn FSA credits at her current rate without interruption and does not lose credits." ECF No. 9-3 ¶ 10; ECF No. 9-3 at 13.

Because Ms. Gilmore has earned the maximum number of ETCs that may be applied toward early release, *see* 18 U.S.C. § 3624(g)(3), the date on which BOP will apply 365 ETCs to Ms. Gilmore's early release will not change. But the date on which BOP will apply Ms. Gilmore's excess ETC credits towards prelease custody will change based on her accumulation of excess ETC credits. *See* ECF No. 9-3 at 2 ("[A]ssuming Petitioner continues to earn FSA credit without interruption . . ."). Both of these dates would change if Ms. Gilmore loses any credits. *See id.* ("[A]ssuming Petitioner . . . does not lose credits . . .").

ETCs, like good conduct credit, may be lost. *See* 28 C.F.R. § 523.43 (entitled "Loss of FSA Time Credits"); 28 C.F.R. § 541.3 (loss of FSA Time Credits is an available sanction for prohibited acts). Because ETCs may be lost or gained throughout a prisoner's term of imprisonment, section 3624(g)(1)(A) does not permit BOP to reduce a prisoner's sentence until the number of ETCs is "equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). Only then can ETCs be applied because they "would no longer be subject to loss for future prohibited acts." *Clark*, *supra*, at *3.

6

Because BOP will not (indeed, cannot) apply any of Ms. Gilmore's ETCs sooner than December 19, 2028, a claim that BOP has miscalculated or misapplied Ms. Gilmore's ETCs cannot accrue until that date.

Accordingly, Ms. Gilmore's present challenge is premature, and must be dismissed on that basis. *Szanyi v. Pullen*, No. 3:22-cv-1253(KAD), 2023 WL 1108469, at *3 (D. Conn. Jan. 30, 2023) (dismissing request to apply ETC credits where petitioner had not earned credits sufficient to equal remainder of her sentence).

### B. The Placement in an RRC or Home Confinement

District courts within the Second Circuit have uniformly held that decisions regarding pre-release custody rest within the discretion of the BOP and that they lack authority to order a transfer to pre-release custody at an RRC or on home confinement. *See, e.g., Bortner v. Stover*, No. 3:24-CV-281(VAB), 2024 WL 3595922, at *3 (D. Conn. July 31, 2024) (denying petition on ground that the court lacks authority under the Second Chance Act to order petitioner transferred to home confinement and citing cases holding that the Second Chance Act, First Step Act, and CARES Act do not remove transfer decisions from sole BOP discretion); *see also, e.g., Rivera-Perez v. Stover*, No. 3:23-CV-1348(SRU), 2024 WL 4819250, at *9 (D. Conn. Nov. 18, 2024) ("BOP has the exclusive authority to determine the facility where an inmate will serve his sentence and to transfer the inmate from one facility to another"; denying request for transfer from RRC to home confinement (quoting *Milchin v. Warden*, No. 2:22-cv-195(KAD), 2022 WL 1658836, at *2 (D. Conn. May 25, 2022) (internal quotation marks omitted))); *Fournier v. Zickefoose*, 620 F. Supp. 3d 313, 318 (D. Conn. 2009) (noting that "the BOP retains discretion under the Second Chance Act to decide whether and when an inmate should be placed in an RRC." (internal quotation marks omitted)).

The Court also construes the petition to also allege that BOP is not permitting Ms. Gilmore's release to an RRC or home confinement. *See* ECF No. 1 at 10 (requesting the Court to "enforce the implementation of [the First Step Act and Second Chance Act] [and] grant the petitioner the right to seek RRC/HC and continue earning ETC credits until [her] sentence is complete"). But, consistent with the caselaw cited above, the Court lacks authority to order Ms. Gilmore's transfer to an RRC or home confinement.

Accordingly, there is no basis to grant relief on this issue.

## IV. CONCLUSION

For the reasons stated above, Ms. Gilmore has failed to meet her burden of proving that she "in custody in violation of the Constitution or laws or treaties of the United States[,]" 28 U.S.C. § 2241(c)(3), and her petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

The Court has further determined that a certificate of appealability will not issue in this case.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at New Haven, Connecticut, this 14th day of February, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE